## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

THOMAS MOYER,                              )
                                )
    Plaintiff,                             )
                                  )
    vs.                                    )    **Case No. 3:23-cv-02353-GCS**
                                  )
JACKSON COUNTY PUBLIC                      )
DEFENDER'S OFFICE,                         )
                                  )
    Defendant.[1]                          )

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

### INTRODUCTION AND BACKGROUND

Before the Court is Defendant's amended motion for summary judgment (Doc. 38, 44). Plaintiff opposes the motion. (Doc. 43). Based on the delineated reasons, the Court **GRANTS** the motion.

On July 7, 2023, Plaintiff Thomas Moyer sued his former employer, Defendant Jackson County Public Defenders Officer ("Public Defender") under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq.* ("ADEA"). Plaintiff's complaint contains three counts: discrimination based on his age (Count I); Defendant's age-based harassment of Plaintiff (Count II); and Defendant's retaliation against Plaintiff for engaging in a protected activity (Count III). (Doc. 1). Prior to filing suit,

---

[1]    The Office of the Public Defender is not a suable entity. The Public Defender is the correct party. *See Burnette v. Stroger*, 905 N.E.2d 939, 947-948 (Ill. Ct. App. 1st Dist. 2009).

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 13, 2022. (Doc. 1-3, p. 2). Also attached to his complaint was Plaintiff's Notice of Right to Sue (Issued on Request) from the EEOC dated June 15, 2023. (Doc. 1-4). Defendant answered the complaint on September 7, 2023. (Doc. 15).

## FACTS[2]

Thomas Moyer, a 72-year-old attorney, worked as an assistant public defender with the Jackson County Public Defender's Office from June 8, 2008, until his termination on May 25, 2022. Moyer worked for the Public Defender's Office for nearly 14 years. In that entire time, he only received a verbal warning for leaving a door to the outside open.

In his complaint, Moyer brought four claims in three counts against the Public Defender's Office. The first claim is that from 2019 to 2022, there were several opportunities for promotion to Chief Public Defender. Moyer was allegedly qualified and applied, but younger, less experienced employees were selected over him due to his age. The second claim is that beginning in 2019, Moyer was subject to age-based harassment including name-calling and questions about when he was retiring. The third claim relates to Moyer's termination in May 2022 for sleeping during a preliminary court hearing via Zoom, which Moyer denies. Moyer claims the sleeping reason was pretextual. The fourth claim is that he was terminated in retaliation for his alleged complaints of discrimination.

Moyer applied for the Chief Public Defender position in 2020 and again just prior to July 2021. He claims that both times less experienced, younger attorneys got the job.

---

[2]    Most of the facts have been agreed to by the parties.

Moyer interviewed both times with the resident judges and stated, "I believe it was ultimately the [Chief] Judge's decision [on whom to select] which was Judge Solverson."

The hiring process for the Chief Public Defender is determined by statute. Specifically, 55 ILL. COMP. STAT. § 5/3-4004 provides as follows:

> Appointment of Public Defender in counties under 1,000,000. As soon as may be after this Division becomes applicable to a county with a population under 1,000,000, the judges of the Circuit Court of the circuit in which the county is located shall, by a majority vote of the entire number of those judges, appoint to the office of Public Defender a properly qualified person, who shall hold office, his death or resignation not intervening, at the pleasure of the judges competent to appoint. Whenever a vacancy occurs in the office it shall be filled in the same manner, and the person appointed to fill the vacancy shall have the same tenure of office.

Moyer is familiar with the statute and agrees that the Public Defender's Office has no control over the selection of the Chief Public Defender. Moyer believes that the Chief county judge selects the public defender, which was Judge Solverson. Moyer also understands that the judges are state employees, but he never researched that issue prior to filing this lawsuit.

The current Public Defender took office in April 2021. Sometime between 2012 and 2014, Peggy Degen became the Chief Public Defender, and she held the job until 2020. In 2020, Moyer applied for the Chief Public Defender position, but Judge Solverson selected Steven Bost instead of Moyer. Moyer never asked Judge Solverson why she selected Mr. Bost over him. Moyer was interviewed by the judges. Moyer understood that it was not up to Ms. Degen who was the outgoing Public Defender.

Mr. Bost served as Chief Public Defender from 2020 until February 2021. Celeste Korando replaced him in April 2021 after Mr. Bost became a judge. Moyer also applied for the Chief Public Defender position in 2021 when Mr. Bost became a judge. Moyer was not selected as Judge Solverson selected Ms. Korando for the Chief Public Defender position.

Starting in 2016-17, Moyer claims that his co-workers Aaron Wise and Timothy Ting, who were also assistant public defenders, began referring to him as "old man." Mr. Ting was hired sometime between 2012 and 2014. Mr. Wise was not hired until 2018. Moyer was friends with Mr. Wise and Mr. Ting, and at least once a month they would allegedly say, "[h]ey, old man, you know, what's up." Moyer never told Mr. Wise or Mr. Ting it bothered him that they called him "old man." In fact, it did not really bother him until he was passed over for the Chief Public Defender's position. Moyer does not recall whether Mr. Wise or Mr. Ting called him "old man" in front of other employees. Moyer never complained to anyone about Mr. Wise or Mr. Ting calling him "old man."

As to other employees, Moyer recalled another incident involving Melissa Lange, the office manager. One day she came in from court and allegedly said, "oh boy, that was something, and she would go, oh, come on, old man, something like that." Moyer never told Lange that he did not want to be called that.

In 2020 and 2021, when Mr. Bost was the Chief Public Defender, Moyer was on Zoom court hearings many times, and people started calling Moyer "Colonel Sanders." Around June 2020, Mr. Bost gifted Moyer a Colonel Sanders tie that Moyer claims he never wore while employed with the office. The Public Defender's Office, however, produced a photo taken by Mr. Wise on June 22, 2020, of Moyer wearing the tie at work. Moyer also wore the

Colonel Sanders tie for Halloween 2023 at his new job in the Williamson County Public Defender's Office.

Moyer estimates that he was referred to as Colonel Sanders between 50-100 times while Mr. Bost was Chief Public Defender. Mr. Bost, Mr. Wise, Mr. Ting, and correctional deputies from the jail all referred to Moyer as Colonel Sanders. Moyer, however, does not recall how many times Mr. Bost, Mr. Wise, or Mr. Ting called him Colonel Sanders. At first, Moyer thought it was funny that people called him Colonel Sanders, but then it started to bother him. Moyer did not tell anyone that he was bothered by the name. Moyer never told his supervisor at the time, Mr. Bost, that he did not want to be called Colonel Sanders or that he was bothered by it.

In 2020, Moyer received a birthday card from his co-workers. In the card, Mr. Wise wrote "Happy Birthday Tom! 70? You don't look a day over 68! – Aaron." (Doc. 38-4, p. 58). The Chief Public Defender at the time, Mr. Bost, did not sign the card. Moyer does not know if Mr. Bost saw the card, and Moyer never complained to anyone about it. Moyer was not referred to by any other names while at the Public Defender's Office.

Ms. Korando never said anything to Moyer based on his age. About a month or so after she took office in April 2021, Ms. Korando asked Moyer when he would be retiring or if he was planning on retiring soon. Moyer told her no. Ms. Korando never asked him again. Moyer had no negative experiences with Ms. Korando before she became the Chief Public Defender.

Several times before and after Ms. Korando took office, Ms. Lange also asked Moyer when he was going to retire. Moyer felt that when Ms. Korando became the Chief Public

Defender, it was a hostile work environment because "she didn't ever talk to us much at
all. There was – I just didn't feel comfortable even discussing much of anything. Her attitude
would be pretty negative in general. It was just – she was more to herself."(Moyer Depo,
Doc. 38-6, p. 5). Moyer testified that he did not feel comfortable talking to Ms. Korando
about people referring to him as Colonel Sanders.

Mr. Ting left the Public Defender's Office when Ms. Korando took over in April 2021.
Mr. Wise also left the Public Defender's Office in December 2020. He is currently a contract
attorney with his own office.

Ms. Korando never called Moyer "old man." Moyer could not recall anyone calling
him "old man" in front of Ms. Korando. After Ms. Korando took office, the jail staff (who
were not employees of the Public Defender's Office) would every now and then call Moyer
"Colonel Sanders" during Zoom hearings while people were in attendance, including Ms.
Korando. Moyer never complained to Ms. Korando about jail staff referring to him as
Colonel Sanders. Moyer does not recall any employee of the Public Defender's Office ever
calling him "Colonel Sanders" or "old man" in front of Ms. Korando.

The Public Defender's Office has an employee handbook containing a section on
non-discrimination and non-harassment, including discrimination/harassment based on
age. The policy states: "[t]he Office expects the immediate reporting of all perceived
incidents of discrimination, harassment, or retaliation, regardless of the offender's identity
or position or the perceived severity of the incident. Individuals who believe that they have
been subjected to harassment (or who have reason to believe that someone else has been
subjected to harassment) should discuss their concerns with the Chief Public Defender

immediately." (Jackson County Public Defender Personnel Policy Handbook, Section 4.1.13; Doc. 38-4, p. 15).

When Moyer was asked if the comments by Mr. Wise, Mr. Ting, and Ms. Lange made him feel like they were showing hostility or aversion towards him, Moyer stated:

A. No, not at the time I didn't feel that way too much. First of all, again, we were so busy at work that I just focused on what I had to do that day. The times I would think about it would be when I got bypassed for the job a number of times for head public defender. And at home sometimes I would think, well, you know, I – don't know why they keep saying that, and I just – but it – honestly, it really didn't dawn on me or really hit me until I got thrown out of the office for what I feel was no reason. And it was just like I didn't see what – why they did that. I just kind of wondered if it wasn't all part of the same thing, if they just felt like I was too old for the job.

(Moyer Depo. Doc. 38-6, p. 8). Moyer never informed anyone in the workplace that he found the conduct unwelcome, offensive, or in poor taste. Moyer never addressed any of his concerns with any of the Chief Public Defenders over the years. Ms. Korando was also not aware of any age-based comments being made to Moyer. Further, when Moyer was asked if the comments bothered him, he testified:

A. No. It really did not bother me a lot until I got bypassed a couple times for the public defender's job – head public defender's job. And I was kind of looking at that as, you know, maybe that's why they're not hiring me because maybe they feel I am too old or something. It was part of that, I guess.

*Id.* at p. 3.

Moyer attended a two-hour course on sexual harassment and discrimination on October 30, 2019. During the training, Moyer learned that age discrimination is illegal. He also discovered the methods he could use to stop it and the avenues he had available to

address the situation. After attending the training, he did not feel the need to report any conduct in the workplace that he thought was offensive.

On May 24, 2022, Moyer was on Zoom for a preliminary hearing before Judge Fiello. Moyer attended the Zoom call from his office with the door closed. Initially, there were many people on the call, and his case was close to the last one to be called.

Ms. Lange provided a declaration stating she was on the May 24, 2022, Zoom hearing. She observed Moyer sleeping during the hearing. Moyer disputes that he was sleeping. Ms. Lange also stated that she observed Moyer with his eyes closed for 30-45 seconds. Moyer also disputes this. Ms. Lange was in the same office building with Moyer that day, but neither she, nor anyone else in the office went to check on Moyer.

Ms. Korando was working from home that day and was also on Zoom for the hearing. Ms. Lange texted Ms. Korando: "[i]s Tom sleeping?" Ms. Korando responded to Lange, "Omg." Ms. Lange then texted back, "WTH. At first, I thought he was passed out or something." Ms. Korando then responded, "[g]uess he and I need to have a meeting tomorrow And also, damnit." Ms. Korando then texted that she was going to call Judge Fiello to see if he noticed Moyer sleeping. (Doc. 38-2, p. 4-5). Ms. Korando later texted back that Judge Fiello did not notice Moyer sleeping. *Id.*

Ms. Korando provided a declaration that she observed Moyer appearing to be asleep during the Zoom hearing. Moyer disputes that he was sleeping. Ms. Korando also declared that she did not believe Moyer's screen was frozen, as she observed Moyer making micro movements with his eyes closed. Moyer also disputes this statement. Moyer denies that he

closed his eyes during the Zoom hearing, denies that he was sleeping, but believes he may have been looking down at his papers.

The next day, Moyer met with Ms. Korando and Ms. Lange, wherein Ms. Korando stated, "it looks like you fell asleep on Zoom yesterday." (Moyer Depo. Doc. 38-6, p. 12). Moyer responded, "[w]hat are you talking about? I didn't fall asleep on Zoom." *Id*. at p. 12-13. Ms. Korando responded, "[w]ell, some people said you did." *Id*. at p. 69. Moyer asked who said that, and Ms. Korando refused to disclose any names. Ms. Korando then told Moyer that he was being terminated for sleeping during the Zoom hearing because it was not good for his case or for his client.

Moyer is aware that Ms. Korando asked other people on the Zoom hearing if they saw Moyer sleeping. Neither the presiding judge, the court reporter, nor Moyer's opposing counsel observed Moyer to be sleeping during the Zoom hearing. Judge Fiello has never observed Moyer to be sleeping in a hearing he has presided over. No other person in the Public Defender's Office has been alleged to have been sleeping when the case they were handling was actively before the court or since Ms. Korando became the Chief Public Defender.

According to the Public Defender's Office, there is an employee handbook. The discipline policy is progressive and contains five levels of discipline. (Jackson County Public Defender Personnel Policy Handbook, Section 13.3; Doc. 38-4, p. 52-53). As to the discipline policy, Ms. Korando testified:

A. The goal is to have a progressive style of discipline. The handbook clearly states this is an at-will employment situation, so if the offense is egregious enough termination can be the immediate response.

(Korando Depo. Doc. 43-1, p. 11).[3]

Ms. Korando did not consider an alternative disciplinary measure for Moyer. Ms. Korando did not contact IT to investigate whether there was a Zoom connection issue.

Ms. Korando replaced Moyer with an attorney in his late 30s who started on May 31, 2022. Ms. Korando testified that she contacted this attorney a week before Moyer's termination to cover a female attorney's maternity leave. However, she offered him a full-time position after Moyer was terminated. As Chief Public Defender, Kornado hired two other attorneys, both younger than Moyer. One of the attorneys was in his 50s.

Under the Public Defender's policies, Ms. Korando, as the Chief Public Defender, is the person to whom an employee must report workplace harassment. Also, Ms. Korando, as the Chief Public Defender, is the only individual responsible for conducting investigations regarding complaints of employment discrimination or harassment.

On October 17, 2022, Moyer filed a Charge of Discrimination with the EEOC alleging harassment and discrimination based on his age starting in 2019, unlawful termination based on his age on May 25, 2022, and retaliation. Moyer does not know why the "retaliation" box was checked off on his EEOC Charge. Moyer acknowledges that he never complained to anyone before he was terminated about any activity that he thought was illegal. Three hundred days before October 17, 2022, is December 21, 2021.

---

[3]    The policy states in part: "[a]gain, you are an 'at-will employee,' and while the Office will generally take disciplinary action in a progressive manner, it reserves the right, in its sole discretion, to decide whether and what disciplinary action will be taken in a given situation. Any employee may receive a warning, a suspension, or be dismissed based upon the severity of the offense." (Jackson County Public Defender Personnel Policy Handbook, Section 13.3; Doc. 38-4, p. 53).

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(c); *Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The movant bears the burden of establishing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *See Santaella v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex*, 477 U.S. at 323). This Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *See Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). *See also Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009) (stating that "we are not required to draw every conceivable inference from the record . . . we draw only reasonable inferences") (internal citations omitted). Summary judgment is also appropriate if a plaintiff cannot make a showing of an essential element of his claim. *See Celotex*, 477 U.S. at 322. While the Court may not "weigh evidence or engage in fact-finding[,]" it must determine if a genuine issue remains for trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *See Walker v. Shansky*, 28 F.3d 666, 670–671 (7th Cir. 1994) (citing *Celotex*, 477 U.S. at 324). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a

jury to return a verdict for that party . . . if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250 (citations omitted). *Accord Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994). In other words, "inferences relying on mere speculation or conjecture will not suffice." *Trade Finance Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009) (internal citation omitted). *See also Anderson*, 477 U.S. at 252 (finding that "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]"). Instead, the non-moving party must present "definite, competent evidence to rebut the [summary judgment] motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000) (internal citation omitted).

Finally, at the summary judgment stage it is not the Court's role to "sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *D.Z. v. Buell*, 796 F.3d 749, 756 (7th Cir. 2015) (citing *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). *See also Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) (noting that courts are "not required to scour the party's various submissions to piece together appropriate arguments."). Instead, the Court "is only tasked with deciding whether, based on the evidence of the record, there is any material dispute of fact that requires a trial." *Buell*, 796 F.3d at 756.

## DISCUSSION

The Age Discrimination in Employment Act prohibits an employer from "discharg[ing] any individual or otherwise discriminat[ing] against any individual

with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1). Its protections are "limited to individuals who are at least 40 years of age." *Id.* at § 631(a). Because the ADEA uses language identical to Title VII and shares a common purpose, courts often use Title VII and ADEA case law interchangeably. *See Crawford v. Medina General Hospital*, 96 F.3d 830, 834 (6th Cir. 1996); 4 N. Peter Lareau, *Labor and Employment Law* § 118.01 (2023). However, an ADEA plaintiff "must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 180 (2009). In this sense, the ADEA is narrower than Title VII as the latter "also protects against mixed motive discrimination." *Carson v. Lake County, Indiana*, 865 F.3d 526, 532 (7th Cir. 2017).

At the summary judgment stage, in the ADEA context, a court must consider all the evidence in the record to determine "whether a reasonable jury could find that the plaintiff suffered an adverse action *because of* h[is] age." *Carson*, 865 F.3d at 533. A plaintiff may also prove his or her case using the burden shifting framework established in *McDonnel Douglas Corp. v. Green*, 411 U.S. 792 (1973). Here, this framework is relevant as Moyer contests the reason for his termination and asserts that the reason was pretextual. Using this framework, Moyer must establish that "(1) []he is a member of a protected class, (2) []he was meeting the defendant's legitimate expectations, (3) []he suffered an adverse employment action, and (4) similarly situated employees who were not members of h[is] protected class were treated more favorably." *Carson*, 865 F.3d at 533 (quoting *Simpson v. Franciscan Alliance, Inc.*, 827 F.3d 656, 661 (7th Cir. 2016)). If the plaintiff establishes the prima facie elements, the

burden shifts back "to the defendant to 'articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual.'" *Id.* (quoting *Simpson*, 827 F.3d at 661).

### A.    Failure to Promote claim  (Count I) and Retaliation Claim (Count III)

As the Defendant pointed out in its reply, Plaintiff did not respond to Defendant's arguments in support of summary judgment regarding Moyer's failure to promote and retaliation claims. Based on the record, the Court finds that summary judgment in favor of Defendant is proper on both claims. As to the failure to promote, Plaintiff brings this claim against the wrong party. The parties agree that the hiring process for the Chief Public Defender is determined by statute, 55 ILL. COMP. STAT. § 5/3-4004, which provides that judges of the Circuit Court appoint the Chief Public Defender. Additionally, Moyer agrees that the Public Defender's office has no control over the selection of the Chief Public Defender. Moyer furthermore believes that the Chief county judge picks the public defender. Clearly, Defendant has no control over who is selected as the Chief Public Defender. Accordingly, the Court **GRANTS** Defendant's motion for summary judgment as to the failure to promote claim in Count I.

Likewise, Defendant is entitled to summary judgment on the retaliation claim in Count III. The ADEA prohibits an employer from retaliating against an employee because he complained of discrimination. *See* 29 U.S.C. § 623(d); 42 U.S.C. § 2000e-3(a). In the retaliation context, "[t]he key question is whether a reasonable juror could conclude that there was a causal link between the [employee's] protected activity . . . and the adverse

action." *Rozumalski v. W.F. Baird & Associates, Ltd.*, 937 F.3d 919, 924 (7th Cir. 2019). Here, Moyer did not show that he engaged in a statutorily protected activity. In fact, Moyer acknowledged that he did not raise complaints of age discrimination with anyone until after his termination. Given Moyer's lack of complaints, the Court **GRANTS** Defendant's motion for summary judgment for the retaliation claim in Count III.

**B.    Age-based Discrimination (Count I)**

Defendant argues that it is entitled to summary judgment as Moyer cannot show that but for his age, he was terminated. Specifically, Defendant maintains that Moyer cannot meet his burden because the Public Defender believed he was sleeping during a Zoom court hearing and terminated him accordingly. Plaintiff avers that Defendant's explanations are not credible and the explanations are pretext as Ms. Lange and Ms. Korando, who both found Moyer was sleeping, also asked Moyer repeatedly when he was going to retire. Further, Moyer contends that the explanation of sleeping on the job is further evidence of age-based discrimination. The Court agrees with Defendant.

Pretext is not established simply because the plaintiff denies the reasons for why he was terminated. Earlier this year, the Seventh Circuit reiterated this notion when it stated the following:

> Shures contends on appeal that, because he denies all of the employer's findings concerning poor performance, a jury trial is required to resolve the dispute. This misunderstands what is necessary to establish pretext. Most fired employees believe that they have unrecognized or underappreciated talents. But it does not matter what the employee believes; the question is what the employer believes. To establish pretext, the plaintiff must show that the employer does not believe its own explanation – that it is lying rather than just making an error. See, e.g., *Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 726 (7th Cir. 2008); *Bragg v. Munster Medical Research Foundation Inc.*, 58 F.4th

265, 271 (7th Cir. 2023).

*Shures v. Ameren Illinois Company*, No. 23-2761, 2024 WL 1756338, at *1 (7th Cir. April 24, 2024).

In the case at bar, Ms. Korando terminated Moyer because she believed he was sleeping on the job during a criminal hearing. During the hearing, Ms. Lange notified Ms. Korando via text that she thought Moyer was sleeping. Ms. Korando then observed Moyer with his eyes closed. She also observed that while Moyer's eyes were closed, he was making micro movements. These micro movements confirmed to Ms. Kornado that Moyer's Zoom connection was not frozen and that he was sleeping. Ms. Korando later texted the presiding judge during the hearing to see if he noticed Moyer sleeping. The text messages during and after the hearing support Ms. Korando's belief that Moyer was sleeping on the job. *See, e.g.*, *Brooks v. Avancez*, 39 F.4th 424, 436 (7th Cir. 2022) (stating that "we generally credit the proposition statements about an event and made soon after perceiving the event are especially trustworthy because 'substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation.'").

Ms. Korando terminated Moyer the next day for sleeping on the job. Many courts in the Seventh Circuit have found sleeping on the job does not meet an employer's legitimate expectations, which is a required element of Moyer's ADEA claim. *See, e.g.*, *Green v. U.S. Steel Corp.*, No. 2:05-CV-213 PS, 2006 WL 2949531, *5 (N.D. Ind. Oct. 12, 2006) (noting that sleeping on the job did not meet employer's legitimate expectations and there was no evidence indicating that those expectations were fabricated or applied in a disparate manner); *Perry v. Pierce Chemical Co.*, No. 00 C 50186, 2002 WL 992658, *1 (N.D. Ill. May 14,

2002) (stating that sleeping on the job did not meet an employer's legitimate expectations

and there was no evidence that a similarly situated employee was disciplined differently

from plaintiff). *See also Reed v. AMAX Coal Co.*, 971 F.2d 1295, 1299-1300 (7th Cir.

1992) (upholding plaintiff's discharge who was terminated pursuant to employer's policies

regarding sleeping on the job, *i.e.*, wherein it treated inadvertent instances of sleeping less

severely than intentional sleeping; further finding that plaintiff's evidence that employer

failed to notify plaintiff and others of such a policy may have established unfairness, but it

did not establish pretext). Despite Moyer's assertions that he was not sleeping, that Ms.

Korando did not properly investigate the incident, and that Ms. Korando asked Moyer

about retirement one time, the record reflects that Ms. Korando and Ms. Lange honestly

believed Moyer was sleeping. Moyer has offered no contradictory evidence other than his

own assertions that he was not sleeping. Such evidence cannot defeat summary judgment

as it is the employer's belief, not the employee's, that is critical to the analysis. *See, e.g.*, *Grubb*

*v. Cook Medical Technologies LLC*, No. 1:17-cv-01086-JMS-MJD, 2018 WL 2416407, at *6 (S.D.

Ind. May 29, 2018) (granting summary judgment in Americans with Disability Act context

where defendant presented undisputed evidence that employer believed employee was

sleeping on the job and finding that its analysis on whether the employee met legitimate

employment expectations would not change even if employee was, in fact, awake and not

sleeping). Because Moyer cannot establish a prima facie element of his claim, *i.e.*, that he

met the employer's legitimate expectations, summary judgment must be granted.

Even if Moyer could establish the above prima facie element, he cannot establish the

element requiring him to show that "similarly situated employees who were not members

of h[is] protected class were treated more favorably." *Carson*, 865 F.3d at 533. Here, Moyer

can point to no such similarly situated employee because the undisputed evidence shows

that no other person in the Public Defender's Office has been accused of sleeping during a

court hearing. *See, e.g., Coates v. Johnson & Johnson,* 756 F.2d 524, 552–553 (7th Cir. 1985)

(finding that there were legitimate reasons for discharging an employee, who was found

sleeping on the job, among other things, and there was no evidence to show that a similarly

situated employee was treated differently).

Moyer furthermore cannot establish his prima facie case merely because he was not

given progressive discipline for the sleeping incident. It is true that the employee handbook

establishes a progressive policy that has several levels of discipline. But the employee

handbook also notes that while disciplinary action should be taken in a progressive manner,

such an approach does not have to be followed depending on the circumstances. In fact, the

employee handbook notes the "at-will" status of the employee. It further notes that the

Office has the right and sole discretion to decide the appropriate disciplinary action in each

situation. This includes suspension or termination depending upon the severity of the

infraction. The undisputed evidence accordingly shows that the Defendant adhered to the

appropriate policies in terminating Moyer. Moyer has furthermore presented no evidence

of a similarly situated individual not in a protected class who was treated differently.

The above analysis shows that Moyer cannot establish his prima facie case to even

get to the issue of pretext. Even if such a prima facie case were established, the Defendant's

legitimate, non-discriminatory reason for terminating Moyer was him sleeping during a

criminal hearing. None of the evidence presented by Moyer could cause a reasonable jury

to believe that the Defendant's proffered reason for termination was pretextual. Simply put, there is nothing to indicate that the Defendant's explanation was "a dishonest explanation, [or] a lie . . . ." *Sweatt v. Union Pacific Railroad Co.*, 796 F.3d 701, 709 (7th Cir. 2015). *See also Bragg v. Munster Medical Research Foundation Inc.*, 58 F.4th 265, 271 (7th Cir. 2023) (noting that pretext was "a phony reason for some action[.]") . For all the above reasons, Defendant is entitled to summary judgment on his age discrimination claim in Count I.

## C.    Age-Based Harassment Claim (Count II)

The Seventh Circuit has assumed the viability of a hostile work environment claim under the ADEA. *See Tyburski v. City of Chicago*, 964 F.3d 590, 601-602 (7th Cir. 2020); *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 660 (7th Cir. 2001). A hostile work environment claim has four requirements: (1) that the plaintiff "was subject to unwelcome harassment; (2) the harassment was based on [] [age]; (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability." *Tyburski*, 964 F.3d at 601 (quoting *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 677 (7th Cir. 2005)).

For harassment to be actionable under the ADEA, it must go beyond "[m]ere 'personal animosity or juvenile behavior' by coworkers . . . ." *Tyburski*, 964 F.3d at 602 (quoting *Brown v. Advocate South Suburban Hospital*, 700 F.3d 1101, 1105 (7th Cir. 2012)). The harassment must be based on age. *Id.* at 601. Swearing or using disrespectful language is not necessarily tied to a person's age. *See Brooks*, 39 F.4th at 441. "Even insults specifically referencing age do not necessarily rise to the level of actionable harassment." *Tyburski*, 964 F.3d at 602. Courts consider "all of the circumstances, including frequency and severity of

the conduct, whether it is humiliating or physically threatening, and whether it unreasonably interferes with an employee's work performance." *Id.* at 602.

As to Moyer's age-based harassment claim, Defendant argues it is entitled to summary judgment as he cannot demonstrate he was harassed because of his age or that the complained-of conduct was physically threatening or humiliating or unreasonably interfered with his work performance.[4] Moyer counters that there is sufficient evidence to establish a genuine issue of material fact that Defendant subjected him to continuing age-based harassment up to the date of his termination. Specifically, Moyer counters that he did not welcome the harassment, that he found it offensive, and that it was hostile in nature. The Court agrees with Defendant.

First, based on the totality of the circumstances, Moyer has not demonstrated that the age-based harassment was objectively offensive or unreasonably interfered with his work performance. *See Mercer v. Cook County, Ill.*, No. 12-2894, 527 Fed. Appx. 515, 520-522 (7th Cir. June 10, 2013). Even construing the facts in Moyer's favor, the Court finds that Moyer's age-based harassment claim fails because the conduct/comments are not sufficiently severe or pervasive to "rise to the level of an actionable hostile work environment." Mr. Bost, Mr. Wise, Mr. Ting, and Ms. Lange's actions, even when viewed together, do not amount to age-based harassment. While the comments may have been

---

[4]    Defendant also argues that this claim is untimely as Moyer cannot identify any age-based comment that occurred after December 21, 2021, which is 300 days prior to him filing his EEOC charge on October 17, 2022. Plaintiff counters that Ms. Lange asked him about his retirement many times before and after Ms. Korando became Chief Public Defender in April 2021 and that Ms. Lange often referred to him as "old man." Drawing reasonable inferences in Plaintiff's favor as the Court must, the Court finds that there is a genuine issue of fact whether Moyer was subjected to age-based harassment within the 300 days prior to the filing of his EEOC charge.

subjectively offensive to Moyer, they were not objectively offensive, and there is no evidence (aside from Moyer's own speculation in his deposition) that the comments/conduct were tied to his age. In fact, Moyer never told Mr. Wise or Mr. Ting that the comments bothered him; he never told anyone the comments bothered him; he never reported the comments to his supervisors, and he testified that the comments did not bother him until he was passed over for the Chief Public Defender's job twice (a position filled outside of the Public Defender's office by the Chief Judge of the Circuit Court pursuant to Illinois law). Further, Moyer does not provide context in how these comments and the Colonel Sanders tie show age discrimination. While Moyer testified, he never wore the tie on the job, the record contains a June 22, 2020, picture of Moyer wearing the tie and that he thought it was funny. Here, there is not enough evidence for a reasonable jury to connect the dots from "old man," "Colonel Sanders" and questions about retirement to an objectively "hostile environment." *See, e.g., Brooks*, 39 F.4th at 441-442 (finding "broad generalizations" about being called "old" and "slow" insufficient to constitute hostile work environment). *See also David v. Board of Trustees of Community College Dist. No. 508*, 846 F.3d 216, 229 (7th Cir. 2017) (noting that courts cannot necessarily "equate retirement eligibility with age" because "eligibility for retirement may be based on age, years of service, or a combination of the two."); *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993) (stating that "an employee's age is analytically distinct from his years of service[]" and therefore "an employer can take account of one while ignoring the other[.]").

In addition, the record is devoid of harassment so severe and pervasive that it affected Moyer's work performance, and Moyer does not argue otherwise. In fact, he

contends that he was an exemplary employee with only one verbal reprimand in the 14 years he was at the Public Defender's office. Moreover, when asked whether he felt like Ms. Lange, Mr. Wise, and Mr. Ting were showing hostility or aversion towards him, Moyer testified: "[n]o, not at that time I didn't feel that way too much. First of all, again, we were so busy at work that I just focused on what I had to do that day." (Moyer Depo. Doc. 38-6, p. 8).

Given the lack of severe and pervasive age-based harassment that created a hostile work environment or affected Moyer's work performance, the Court need not address the last element which is employer liability. *See Brooks*, 39 F.4th at 443. Thus, the Court finds that Defendant is also entitled to summary judgment on the age-based harassment claim in Count II.

## CONCLUSION

For the above-stated reasons, the undersigned **GRANTS** Defendant's amended motion for summary judgment. (Doc. 38). The Court **FINDS** in favor of Defendant Jackson County Public Defender's Office and against Plaintiff Thomas Moyer. Further, the Court **DIRECTS** the Clerk of the Court to enter judgment in favor of Defendant Jackson County Public Defender's Office and against Plaintiff Thomas Moyer and close the case.

**IT IS SO ORDERED.**

**DATED:  March 31, 2025.**

Gilbert C Sison

Digitally signed by Gilbert C Sison
Date: 2025.03.31 13:11:03 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**